**Billie BAILEY, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

Supreme Court of Delaware.

Following Supplemental Briefing and Argued: May 7, 1984.

Decided Sept. 20, 1984.

John A. Parkins, Jr. (argued), Chief of Appellate Div., Dept. of Justice, Wilmington, for plaintiff below, appellee.

Nancy Jane Mullen (Argued), Asst. Public Defender, Wilmington, for defendant below, appellant.

McNEILLY, Justice:

Before HERRMANN, C.J., McNEILLY, HORSEY, MOORE and CHRISTIE, JJ., constituting the Court *en Banc.*

The guilt phase of this case having been decided by this Court's Opinion dated February 7, 1983, 490 A.2d 158, we now turn to defendant's assertions of error which he claims arose at his penalty hearing held pursuant to § 4209. At that hearing, the State presented its opening argument first, seeking the death penalty based upon the alleged existence of four statutory aggravating circumstances: "1. The murders of Mr. and Mrs. Lambertson were committed by one who had escaped from a place of confinement. The State contends the defendant had escaped from the Plummer House...." *Id.* § 4209(e)(1)(a); "2. The murders were committed while the defendant was engaged in flight after committing robbery in the first degree, at the Cheswald Beverage Mart". *Id.* § 4209(e)(1)(j); "3. The defendant's course of conduct resulted in the deaths of two or more persons wherein the deaths were the probable cause of the defendant's conduct". *Id.* § 4209(e)(1)(k); "4. The statutorily aggravating circumstance, the State will rely upon, is that the murders were so outrageously or wantonly vile, horrible or inhuman". *Id.* § 4209(e)(1)(n).

In the defendant's opening statement, counsel indicated that the evidence defendant would introduce would be brief in that they (the jury) would be permitted to rely on the evidence presented in the first phase of the trial in determining the penalty to be imposed upon defendant. Counsel characterized the murders as not being the product of a cool calculating and deliberate mind, but rather the consequence of the buildup of emotional problems in defendant over a period of years which culminated in the senseless and irrational violence and murder of the victims. Defendant was pictured by the defense not as a person supported and accepted by his family and society, but as a person rejected by his family and society virtually all his life. Counsel described defendant as one who never had

the advantages most persons enjoy and take for granted, who the year before faced the loss of his wife and child and the loss of his freedom, making him a product of the State operated institutions which give little attention to the emotionally disturbed. Counsel submitted to the jury in this opening statement that defendant is deserving of pity and not vengence, of understanding and not retribution.[1]

## I

██ The first issue we address is the defendant's contention that at the penalty hearing the Trial Judge erred in instructing the jury:

> You have already convicted the defendant of causing the death of two persons; therefore, that aggravating circumstance has been established beyond a reasonable doubt and you are so instructed.

Defendant asserts that such an instruction is unconstitutional in that it establishes a conclusive presumption and obviates the requirement that the State prove the particular aggravating circumstance beyond a reasonable doubt. Secondarily, defendant asserts that the instruction violates the statutory scheme creating a bifurcated hearing. We disagree.

The jury at trial had found defendant guilty of Murder in the First Degree of the two victims, Clara and Gilbert Lambertson, in violation of 11 *Del.C.* § 636(a)(1). By instructing the jury that it already had established the statutory aggravating circumstance of causing the death of two persons, the Trial Judge properly instructed the jury that the aggravating circum-

stance set forth in 11 *Del.C.* § 4209(e)(1)(k) had been established by them at trial, i.e.,

> "The defendant's course of conduct resulted in the deaths of 2 or more persons where the deaths are a probable consequence of the defendant's conduct".

The cases cited by defendant relating to the unconstitutionality of conclusive presumptions are inapposite since they apply to trial situations and not after the verdict situations as here in a bifurcated penalty hearing.[2]

## II

██ We now turn to defendant's original assertion that the statutory aggravating circumstances in § 4209(e)(1)(n)—"The murder was outrageously or wantonly vile, horrible or inhuman"—is unconstitutionally vague because it does not provide a constitutionally adequate guideline to channel the discretion of the sentencing jury in imposing the death penalty. As in *Flamer v. State*, 490 A.2d 104 decided this same day, however, during the pendency of this appeal, the Superior Court concluded, and this Court agreed, that this statutory aggravating circumstance is unconstitutionally vague. Therefore, like in *Flamer*, the issue became whether defendant's death penalty must be vacated because the jury was permitted to weigh the invalid circumstance although the evidence constituting the statutorily invalid circumstance was properly before the jury.

Rather than address question of whether a "proper" jury instruction may have cured any defect as to this invalid statutory aggravating circumstance, as the State has

---

**1.** Counsel for defendant did not explicitly refer to the specific mitigating factors which would be relied upon, preferring to let the jury draw its own conclusions from argument of counsel and the testimony elicited at trial and at the penalty hearing. Counsel for each side, however, had filed lists of aggravating and mitigating circumstances to be relied upon at the penalty hearing pursuant to 11 *Del.C.* § 4209(c)(1).

**2.** We limit our holding as to this aspect of the appeal to the situation in which the sentencing jury is the same jury which convicted defendant. Section 4209(b)(1) contemplates the possibility that a separate and new jury be impanelled if the convicting jury cannot participate in the hearing. In this unique situation, we would require both parties to introduce evidence to support the existence of any aggravating or mitigating circumstances which they seek to prove.

maintained occurred in this case, we find that the more appropriate resolution of this issue lies in our analysis of *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) and *Barclay v. Florida*, 463 U.S. 939, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983), set out in *Flamer*. Applying that analysis to the instant case results in a similar conclusion affirming defendant's death penalty, as we did in *Flamer*, in that under our statute, with the "weighing of aggravating and mitigating circumstances coming into play at the post-threshold discretionary stage of the jury's determination rather than at the threshold stage where the class of cases capable of having a death penalty is circumscribed, any error that might have occurred is harmless. As we stated in *Flamer*, after distinguishing the Florida death penalty scheme in *Barclay* from our statute,

> as to any claim that the alleged duplication in statutory aggravating circumstances caused the jury to affix too much weight to them, our review of the trial transcript reveals no effort by the Trial Court to instruct the jury to "place particular emphasis on the role of statutory aggravating circumstances in [its] ultimate decision." *Zant* [103 S.Ct.] at 2749. And nowhere did the Trial Court suggest "that the presence of more than one aggravating circumstance should be given special weight" *Id* at 2750. *Flamer* at 136.

Therefore, defendant's argument fails.

We do note, however, as we did in *Flamer* that:

> Our decision in this case depends in part on the existence of an important procedural safeguard, the mandatory appellate review of each death sentence ... to avoid proportionality. *Zant* [103 S.Ct.] at 2750.

But, as we concluded in *Flamer*, the affirmance of defendant's death penalty "does not render this review any less meaningful".

### III

The last contention defendant raises is again identical to one of many issues resolved in *Flamer*. That issue concerns itself with the question of whether the imposition of the death penalty on the defendant here violates the mandates of 11 *Del.C.* § 4209 because it is disproportionate to the penalty recommended or imposed in similar cases arising under that section. Stated otherwise, we are concerned here with whether defendant's death sentence is comparatively disproportionate rather than inherently so, as the defendant in *Flamer* also raised.

The question of what standard of review to apply in comparatively proportionality reviews has never been exclusively established by the United States Supreme Court. *See Flamer* at 136. The Supreme Court has indicated, however, that where state law does not require such a review, a failure to conduct one is not in and of itself unconstitutional. *Pulley v. Harris*, 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). But, as we stated in *Flamer*, our legislature has seen fit to require such a review thus rendering *Pulley* meaningless for our purposes. The question now becomes what is the universe of cases we consider in determining whether defendant's death penalty was disproportionate.

Considering the Maryland Court of Appeals decision in *Tichnell v. State*, Md.Ct. App., 297 Md. 432, 468 A.2d 1 (1983), this Court in *Flamer* held that only those cases in which a § 4209 penalty hearing was held regardless of whether a life imprisonment or death sentence was imposed need be considered. Once again, we find this universe of cases to represent a sufficient cross-section of similar cases under which an adequate review can be made. *See Flamer* at 136; *Accord, Ross v. State*, Ga.Supr., 211 S.E.2d 356, 359 (1974). Thus, we turn to consideration of those cases and, as in *Flamer*, since the decision of this case is being published the same day as the *Flamer* decision our comparative analysis

of the background of our presently existing universe of cases overlaps our discussion in *Flamer* and nothing additional need be stated.

Our consideration of the totality of the circumstances of this case and the propensities of the defendant, all of which are extensively set out within the ambit of this opinion, lead us to no other conclusion than that the imposition of death was neither arbitrarily nor capriciously imposed, and is not disproportionate to the penalties imposed in the other cases within the universe.

For the foregoing reasons, the convictions and sentences are hereby

\* \* \* \* \* \*

AFFIRMED.