Jason HAINEY, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

No. 252,2004.

Supreme Court of Delaware.

Submitted: June 8, 2005.

Decided: July 5, 2005.

---

41. DEL. R. EVID. 403.

42. *Williams v. State,* 494 A.2d 1237, 1243 (Del.1985).

Jerome M. Capone, Esquire (argued), of Wilmington, Delaware, and Michael C. Heyden, Esquire, of Wilmington, Delaware, for Appellant.

John Williams, Esquire, of the Department of Justice, Dover, Delaware, for Appellee.

Before STEELE, Chief Justice, BERGER and JACOBS, Justices.

BERGER, Justice.

This is Jason Hainey's direct appeal from his convictions of first degree murder and several related charges. He argues that there was insufficient evidence to support the jury's verdict. In addition, he challenges: (i) the trial court's failure to give a limiting instruction with respect to evidence that Hainey possessed a revolver at the time of a police search in an unrelated incident; and (ii) the trial court's decision to exclude evidence of a witness's prior conviction. After carefully reviewing the record, we are satisfied that there is sufficient evidence to support the convictions and that there was no abuse of discretion or plain error in the trial court's

evidentiary rulings. Accordingly, we affirm.

### Factual and Procedural Background

On August 21, 2001, Hainey was "chilling" at Monia B. Tann's house, along with Earl Evans, and another man, who was identified as "Fly" or "Phil." Hainey called the victim, Michael Mercer, and arranged to buy a CD from him. Tann then drove Hainey to see Mercer, who was living at his fiancé's house. Before leaving Tann's house, Hainey took Tann's Special Cobra handgun from Tann's kitchen cabinet. En route, Hainey told Tann that he was going to rob Mercer.

When they arrived at Mercer's house, Tann waited in the car for about ten minutes. During that time, Tann heard two noises, although he did not think they sounded like gun shots. Hainey returned to the car and told Tann that Mercer had reached for the gun and that Hainey shot him.

At the time of the shooting, Mercer's fiancé's teen-aged daughter, Talirra Simmons, was in her bedroom. When she heard the gunshots, she hid in her closet, and did not come out until she heard someone leaving. She found Mercer lying on the floor and ran to a neighbor's home to call the police. The autopsy established that Mercer had been shot six times, and that three of those shots were fired into his back.

After the shooting, Hainey and Tann drove back to Tann's house. They picked up the other two men, and then drove to New Jersey for a few hours. At some point that evening or the next day, Hainey returned Tann's gun and placed it back in the kitchen cabinet. The day after the shooting, Hainey, Tann, Evans, and Evans' roommate, Wayne Anthony Hall, were talking about a newspaper article describing Mercer's death. Hainey told them that he was relieved because there was not much information in the article.

About a week later, after the police learned that Mercer received a call from Tann's house on the afternoon of the murder, the police went to Tann's house to investigate. By that time, however, the murder weapon was gone. On September 12, 2001, the police discovered the gun at Evans' house, during a search undertaken in connection with an unrelated criminal investigation. The gun was found in a room that Hainey had been occupying, together with some of Hainey's clothing. The police did not immediately connect the gun found in Evans' house with the Mercer killing. In March 2003, however, when Evans was arrested for robbery, Evans told the police that the gun they had taken when they searched his house in 2001 was the Mercer murder weapon.

At trial, Tann and Evans were the principal witnesses for the prosecution. Both men have criminal records and stood to benefit from cooperating with the State. In addition, their stories were not entirely consistent. Hainey defended the case by trying to establish that Tann and Evans were the perpetrators and that they made up the story about Hainey to protect themselves. The jury deliberated for almost two days before sending a note saying that they were deadlocked at 6—6. The following day, however, they reached a verdict and found Hainey guilty on all charges. After the penalty phase, the jury recommended against the death penalty by a vote of 7—5, and the trial court imposed a life sentence. This appeal followed.

### Discussion

■ Hainey challenges the sufficiency of the evidence as to all of his convictions. He bases this argument on the inconsistencies in the witnesses' accounts and on the fact that the jury found it difficult to reach

a verdict. Because it does not appear that Hainey properly preserved this issue by moving for a judgment of acquittal in the trial court, our standard of review is plain error.[1] Even under a *de novo* standard, however, we find that there is sufficient evidence for a rational finder of fact, viewing the evidence in the light most favorable to the State, to find Hainey guilty beyond a reasonable doubt.[2]

Tann testified that: (i) Hainey took Tann's gun; (ii) they drove to Mercer's house; (iii) Hainey told him that Hainey was planning to rob Mercer; (iv) while waiting outside, Tann heard two noises from inside the house; and (v) when Hainey got back in the car, he said that he had shot Mercer. Evans did not drive to the house with Tann and Hainey, but he was at Tann's house when the two men returned. Evans testified that: (i) during the car ride to New Jersey after the shooting, Hainey told him that he pulled a gun on Mercer, but that Mercer grabbed for the gun and it went off; (ii) Hainey also told Evans that he put five more bullets into Mercer because he did not want to leave any witnesses; and (iii) they were driving to New Jersey in order to give Hainey an alibi. There was additional, corroborating testimony from Anthony Wayne Hall, Evans' roommate. Hall testified that, the day after the murder, Evans showed him a newspaper article about the shooting and told him that Hainey had done it. In addition, Hall testified that Hainey had been staying at his house when the police discovered the gun among Hainey's possessions on the living room floor. We are satisfied that a rational trier of fact could have believed this testimony, which was sufficient to establish Hainey's guilt on all charges.

The fact that the jury deliberated for a long time, and that it was deadlocked at one point during the deliberations, does not change the analysis. Where, as here, there is competent evidence supporting a guilty verdict, this Court does not weigh that evidence or evaluate the inconsistencies in witnesses' stories. That is the jury's function.[3]

■ Hainey next argues that the trial court committed plain error by failing to give a limiting instruction, as mandated in *Getz v. State*.[4] The gun that was found at Earl's house approximately one month after Mercer's murder was introduced into evidence. The jury heard that the gun was discovered during a search of Evans' house. In addition, Evans testified that it was Hainey's gun, and Tann testified that it was his gun, but that Hainey used it to shoot Mercer. Hainey made no request for a limiting instruction at trial. Now he argues that the trial court, *sua sponte*, should have instructed the jury that it could not use the fact that Hainey may have possessed the gun as evidence that Hainey is a bad person.

■ Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[5] Generally, the failure to give a limiting instruction in relation to prior bad acts is not plain error.[6] Hainey argues that, because this was a close case, the general rule does not apply. We disagree. First, the mere fact that Hainey

1.  *Liket v. State*, 719 A.2d 935, 939 (Del.1998).

2.  *Ibid.*

3.  *Zutz v. State*, 160 A.2d 727, 729 (Del.1960).

4.  538 A.2d 726 (Del.1988).

5.  *Wainwright v. State*, 504 A.2d 1096, 1100 (Del.1986).

6.  *Williams v. State*, 796 A.2d 1281, 1290 (Del. 2002).

had possession of Tann's gun is not evidence of a bad act or crime. Thus, it is not clear that a *Getz* limiting instruction would have been required even if Hainey had requested it. Second, assuming that a limiting instruction should have been given, because the jury could infer that the police were investigating another crime that Hainey might have committed, we find that the failure to give such an instruction did not jeopardize the fairness of Hainey's trial. There was testimony that Hainey used the gun to murder Mercer. The possibility that Hainey might have committed another, unidentified, crime was not so prejudicial as to require reversal.

Finally, Hainey contends that the trial court abused its discretion by excluding evidence of Tann's juvenile burglary conviction. Hainey points out that Tann's testimony was critical to the State's case, and argues that he should have been allowed to impeach Tann's credibility with evidence of his criminal record. The trial court agreed that Tann's credibility was "key," and admitted evidence of two adult felony convictions in Virginia as well as evidence that Tann was facing two sets of robbery charges in Delaware. After noting that juvenile criminal records generally are inadmissible, the trial court decided that evidence of Tann's juvenile record was not necessary "for a fair determination of [Hainey's] guilt or innocence." [7]

We conclude that the trial court acted well within its discretion in excluding Tann's juvenile record. The important facts, for impeachment purposes, were that Tann had a history of committing crimes of dishonesty, and that he had a strong incentive to testify in a way that pleased the State because of the pending charges. The jury heard evidence of Tann's adult criminal record, and knew that he was facing many years of incarceration if convicted of the two robbery charges then pending against him. Little, if anything, would have been gained if the jury also heard that Tann had a juvenile record.

### Conclusion

Based on the foregoing, the judgments of the Superior Court are affirmed.