Chauncey S. STARLING, Defendant Below, Appellant,

v.

STATE of Delaware, Plaintiff Below, Appellee.

Nos. 554 & 556, 2005.

Supreme Court of Delaware.

Submitted: July 12, 2006.
Decided: July 24, 2006.

---

**34.** *Id* at *2.

**35.** *Id* at *3.

Bernard J. O'Donnell, Esquire, Office of the · Public Defender, Wilmington, Delaware, for appellant.

Paul R. Wallace, Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice.

This automatic appeal was filed on behalf of the defendant-appellant, Chauncey S. Starling, after he was sentenced to death following two separate convictions of Murder in the First Degree. The Superior Court originally sentenced Starling on June 10, 2004. Upon direct appeal, Starling's convictions were affirmed, but the two death sentences were vacated. This matter was remanded for "the limited purpose of resentencing under the appropriate standard articulated in 11 *Del. C.* § 4209(d)."[1] On October 12, 2005, the Superior Court again sentenced Starling to death for each count of Murder in the First Degree.

### Procedural Background

The grand jury indicted Starling and co-defendant Richard G. Frink on two counts of Murder in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony, and one count of Conspiracy in the First Degree. Starling's murder trial commenced on October 15, 2003. On October 22, 2003, the jury returned a verdict of guilty as to all five counts of the indictment.

On October 29, 2003, the penalty phase of the trial began, concluding on November 4, 2003. The jury answered all special interrogatories affirmatively and unanimously recommended death as a sentence. The error that was committed when Starling was originally sentenced to death occurred after the jury made its findings and recommendations.[2] Consequently, the error's effects were limited solely to the trial judge's sentencing decision and did not affect the jury's findings and recommendations.[3]

### Facts

About 8:30 p.m. on Friday, March 9, 2001, the barbers at Made–4–Men barbershop on 4th Street in Wilmington were working on several customers. Darnell Evans was seated in the first barber chair on the right, closest to the entrance of the shop. His girlfriend, Shaylyn Flonnory, was seated next to him. Damon Gist Sr., another regular customer, was also in the shop that evening. He had brought his five-year-old son, Damon Jr. ("DJ"), with him as he often did on Friday nights. DJ was sitting in the third barber chair from the entrance as he waited for his father. Several other people were also in the shop.

Flonnory saw a person walking on the sidewalk, dressed in black and holding a gun. Several people heard a shot fired from outside the barbershop just before the front window shattered. Lawrence Moore, the shop owner, was hit by flying

---

1. *Starling v. State,* 882 A.2d 747, 760 (Del. 2005), *cert. denied,* —— U.S. ——, 126 S.Ct. 1433, 164 L.Ed.2d 136 (2006).

2. *Id.*

3. *Id.*

glass. A person dressed in black, with a mask covering all of his face except his eyes, came into the barbershop. The gunman shot at Evans, who tried to flee toward the rear of the shop. The gunman continued to shoot at Evans. Evans fell to the floor at the back of the shop. The shooter followed Evans, stood over him and shot him twice in the head.

The gunman fled out the front door. Evans had been shot five times. DJ, who had been shot in the jaw, ran to his father with blood running from his mouth. Shopowner Moore followed the shooter out of the barbershop to the corner of 4th and Shipley streets. Then he realized that it was probably not wise to chase an armed man, and abandoned the chase. He last saw the gunman turn east onto 5th Street. DJ and Evans both died as a result of their wounds.

The witnesses police interviewed at the scene agreed that the gunman was dressed in dark clothing, including a sweatshirt with a hood. The gunman's face was mostly covered with some type of mask. None of the witnesses was able to identify the gunman.[4] No weapon was recovered. The evidence gathered at the crime scene indicated that the weapon used was a .38 special or a .357 magnum.

About a month later, police discovered Alfred Gaines, a new witness regarding the shootings. Gaines testified that on the afternoon and evening of March 9, he was riding around Wilmington with his friends, Chauncey Starling and Richard Frink. Frink was driving. Starling was in the front passenger seat, and Gaines was behind him. As they drove past the Made–4–Men barbershop, Starling thought he saw Evans inside.

According to Gaines, Starling and Frink discussed whether Evans was the person in the barbershop. While Frink circled back to pass the barbershop again. Starling said that, if it was Evans, he would "put in some work." On the second pass, Frink said that it was Evans in the barbershop. Frink parked the car behind the barbershop on 5th Street between Market and Shipley streets.

Once the car was parked, Starling got out of the car and removed his jacket. He put on a "wave cap" and placed a gun in his pants. Starling was dressed in dark clothes, including a black hooded sweatshirt. Starling walked down the street to Shipley Street and turned toward Market Street. Frink and Gaines stayed in the car. Starling returned about fifteen minutes later, telling Frink, "I got him. I got him. I think I got a little boy, too." Frink then drove Gaines home.

Shortly after 10 p.m. that night, Starling telephoned Gaines saying he needed to talk. Gaines took a taxi to the house of Vickie Miller, Starling's girlfriend. Gaines testified that Starling appeared upset and admitted shooting a little boy. Starling's brother, Michael, was at Miller's house and later told police that Starling was "drunk out of his mind." Starling told Michael, "I'm sorry, I'm sorry." Michael drove Gaines home.

Starling's defense at trial attacked the credibility of the prosecution's primary witness—Gaines. The defense also pointed contradictions in the descriptions of the shooter that the various witnesses provided. Starling's mother and uncle testified that one or both of them had been with Starling on March 9 until nearly 9 p.m. Starling did not testify.

The jury found Starling guilty of two counts of Murder in the First Degree for the deaths of Darnell Evans and DJ Gist. It also found him guilty of the related weapons and conspiracy charges.

4. At trial, however, Flonnory testified that Starling's eyes matched those of the shooter.

### Penalty Hearing

Evidence was presented during the penalty hearing over a period of three days. The State alleged three statutory aggravating circumstances: first, Starling's course of conduct resulted in the deaths of two persons and the deaths were probable consequences of his conduct; second, as to the shooting of DJ Gist, the victim was younger than fourteen years old and Starling was more than four years older than DJ; and third, Starling had been previously convicted of a felony involving the use or threat of force or violence against another person.

The jury was instructed that its guilty verdicts for the two murders required it to find the first aggravating circumstance had been established beyond a reasonable doubt. The jury also unanimously found the other two statutory aggravating circumstances had been established beyond a reasonable doubt. The jury was advised that its finding of at least one statutory aggravating circumstance made Starling eligible for the consideration of the death penalty and that it had to then answer a second question as to each of the two counts of murder:

> 5. Does the jury find by a preponderance of the evidence after weighing all relevant evidence in aggravation or mitigation which bears upon the particular circumstances or details of the commission of the offense and the character and propensities of the offender, that the aggravating circumstances found to exist outweigh the mitigating circumstances found to exist?

The jury was instructed that a "Yes" answer to this question meant a recommendation in favor of the death penalty and a "No" answer was a recommendation for a life sentence. All twelve jurors answered "Yes" to each count of Murder in the First Degree. The Superior Court judge imposed a sentence of death for each of the two murder convictions.

### Death Sentence Review Mandatory

█ Review by this Court is statutorily mandated following the imposition of a death sentence.[5] Although the mandatory statutory review is limited, it is not perfunctory.[6] A death sentence may be imposed only in accordance with the bifurcated procedure proscribed by Title 11, section 4209. Section 4209(g)(2) provides:

> The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:
>
> a. Whether, considering the totality of evidence in aggravation and mitigation which bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.
>
> b. Whether the evidence supports the jury's or the judge's finding of statutory aggravating circumstance enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)-(7) of this title.[7]

5. Del.Code Ann. tit. 11, § 4209(g) (2002). *See, e.g., Jackson v. State,* 684 A.2d 745, 753–54 (Del.1996); *Gattis v. State,* 637 A.2d 808, 821–22 (Del.1994); *Dawson v. State,* 637 A.2d 57, 65 (Del.1994); *Sullivan v. State,* 636 A.2d 931, 948–51 (Del.1994); *Wright v. State,* 633 A.2d 329, 339–43 (Del.1993).

6. *Dawson v. State,* 637 A.2d at 65. *See Dobbert v. Florida,* 432 U.S. 282, 295, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977).

7. Del.Code Ann. tit. 11, § 4209(g)(2).

In performing its mandatory statutory review, this Court is always cognizant that "death as a punishment is unique in severity and irrevocability." [8]

We generally begin our mandatory statutory review in each capital case by addressing subparagraph (b) of section 4209(g)(2). Following the United States Supreme Court decision in *Ring v. Arizona*,[9] the Delaware statute was amended. Subparagraph (b) now requires this Court to examine the evidence in the record to determine whether it supports the unanimous findings of the jury that the statutory aggravating circumstances have been established beyond a reasonable doubt.[10]

■ Two additional inquiries are required by subparagraph (a) of section 4209(g)(2). The first question is whether the Superior Court judge's imposition of the death penalty was arbitrary or capricious.[11] The second inquiry is whether the death penalty imposed was disproportionate to the penalty imposed in similar cases arising under this statute.[12] Each question requires a consideration of the totality of evidence in aggravation and mitigation, which in turn bears upon the particular circumstances or details of the offense and the character and propensities of the offender.[13]

### Statutory Aggravating Circumstances

In Starling's case, the State alleged three statutory aggravating circumstances:

1. § 4209(e)(1)(k)—The defendant's course of conduct resulted in the deaths of 2 or more persons and the deaths were the probable consequence of the defendant's conduct.

2. § 4209(e)(1)(s)—As to Count II, the victim was a child 14 years of age or younger, and the murder was committed by an individual who is at least 4 years older than the victim.

3. § 4209(e)(1)(I)—The defendant was previously convicted of a felony involving the use of, or threat of, force or violence upon another person (such felonies are noted in the criminal record attached hereto).

In this appeal, Starling does not claim that the evidence is insufficient to support the jury's findings that the three statutory aggravators were each proven beyond a reasonable doubt.[14]

This Court has independently examined the record and concluded that the evidence supports each of the jury's findings. First, there was no dispute at trial that two people, Darnell Evans and DJ Gist, were shot and killed at the Made–4–Men barbershop on March 9, 2001.[15] Second,

---

**8.** *Dawson v. State*, 637 A.2d at 66 (quoting *Pennell v. State*, 604 A.2d 1368, 1375 (Del. 1992) (citation omitted)).

**9.** *Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

**10.** *Brice v. State*, 815 A.2d 314, 320 (Del.2003) (discussing the 2002 amendment to Delaware's death penalty statute).

**11.** *Manley v. State*, 709 A.2d 643, 658 (Del. 1998) (citing *Wright v. State*, 633 A.2d 329, 339 (Del.1993)).

**12.** *Id.*

**13.** *Manley v. State*, 709 A.2d at 658; *Wright v. State*, 633 A.2d at 339 (quoting *Red Dog v. State*, 616 A.2d 298, 306–07 (Del.1992)) (cer-

tain citations and quotation marks omitted); *Gattis v. State*, 637 A.2d at 821; *Dawson v. State*, 637 A.2d at 66; *Sullivan v. State*, 636 A.2d at 949. *See generally Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

**14.** *See Gattis v. State*, 637 A.2d 808, 821 (Del. 1994) (noting that defendant did not contest finding of statutory aggravating circumstances).

**15.** *See Reyes v. State*, 819 A.2d 305, 316–17 (Del.2003) (finding sufficient evidence to support statutory aggravating circumstance under Del.Code Ann. tit. 11, § 4209(e)(1)(k) where jury convicted on two first-degree murder charges).

there was no dispute that DJ was five years old when he died as a result of the gunshot wound and that Starling was more than four years older than DJ. Third, the State presented uncontested evidence during the penalty phase that Starling had previously pled guilty, *inter alia*, to the violent felony crimes of Reckless Endangerment in the First Degree and Robbery in the First Degree.[16] Accordingly, we hold that the State presented sufficient credible evidence for the jury to find beyond a reasonable doubt the existence of all three of the alleged statutory aggravating circumstances.[17]

### *Death Sentence Not Arbitrary or Capricious*

■ The record reflects that the trial judge's decision to impose the death penalty for each murder conviction was neither arbitrary nor capricious.[18] In reaching his decision, the trial judge considered a number of other aggravating and mitigating circumstances. The State presented evidence regarding the following non-statutory aggravating circumstances:

1. The criminal history of the defendant which includes the defendant's history of juvenile offenses, the defendant's history of violent crimes, the defendant's history of other crimes against persons and any other evidence of criminal behavior by defendant (a copy of his criminal record is attached);

2. The future dangerousness of the defendant as evidenced by his prior criminal record and the circumstances of this case;

3. The future dangerousness of the defendant as evidenced by his willingness to engage in violent, threatening or assaultive conduct toward other persons, even if such conduct has not resulted in a criminal conviction or adjudication of delinquency;

4. The defendant's institutional record;

5. The defendant's lack of amenability to lesser sanctions and failure at previous rehabilitative efforts;

6. The nature of these offenses as arising from a premeditated murder that was the result of a significant level of planning; and

7. The impact these offenses have had on the family and friends of the victims.

In mitigation, Starling's attorneys presented evidence of the following circumstances:

1. Major depression-chronic.

2. Alcohol and drug dependent.

3. Learning disorder.

4. Borderline intellectual functioning/low IQ.

5. History of head trauma.

6. Difficult childhood.

7. Severe impact of learning that step-father was not biological father.

8. Lack of adequate male role model.

9. Supporting family.

10. Positive attributes, acts and relationships.

11. Active involvement in lives of two daughters.

12. Devastating impact on defendant's family and loved ones.

13. Positive adjustment to incarceration and supervision.

14. Defendant desires to better himself.

---

**16.** *See* Del.Code Ann. tit. 11, §§ 604, 832.

**17.** *See Brice v. State,* 815 A.2d 314, 322 (Del. 2003).

**18.** *Red Dog v. State,* 616 A.2d 298, 310 (Del. 1992) (If the court's decision to impose a death sentence was "the product of a deliberate, rational and logical deductive process," then it is neither arbitrary nor capricious).

15. Shooting of child victim not planned.
16. Defendant's age.
17. Parents failure to seek counseling or treatment.

■ The rationale for the Superior Court's sentencing decision was explained in a comprehensive twenty-eight-page opinion.[19] In its sentencing decision, the Superior Court judge considered the statutory and non-statutory aggravating circumstances presented by the State. He also carefully considered the mitigating evidence Starling presented. After setting forth his analysis of the statutory and non-statutory aggravating circumstances, as well as the mitigating circumstances, the Superior Court judge weighed them. The procedure that must be followed by Delaware Superior Court judges "is not a mere counting process of X number of aggravating circumstances and Y number of mitigating circumstances but rather a reasoned judgment as to what factual situations require the imposition of death and which can be satisfied by life imprisonment in light of the totality of the circumstances present."[20]

After a careful review of the entire record, this Court concludes that the sentence of death for each murder conviction was not imposed upon Starling either arbitrarily or capriciously.[21] The record reflects that the Superior Court judge carefully considered the totality of the evidence in aggravation and mitigation, which related to the particular circumstances of the murder of Darnell Evans and DJ Gist, as well as to the character and propensities of Starling.[22] The record reflects that the Superior Court judge's decision to impose the death sentence was "the product of a deliberate, rational and logical deductive process."[23]

### Proportionality Review

■ The final issue that this Court must address in its mandatory review is whether the Superior Court judge's imposition of the death penalty upon Starling was disproportionate to the penalty imposed in other cases arising under the Delaware death penalty statute.[24] In answering that inquiry, this Court has reviewed the "universe" of cases.[25] The "universe" of cases is comprised of those First Degree Murder cases which have included a penalty hearing and in which *a sentence of either life or death* has become final, without or following a review by this Court.[26] While penalty decisions rendered before the 1991 amendment to section 4209 are pertinent, sentences imposed under the 1991 amendment are "directly applicable and therefore most persuasive."[27]

19. *State v. Starling,* Del.Super. Ct., Cr. ID No. 0104015882, Herlihy, J. (Oct. 12,2005) (Sentencing Decision).

20. *State v. Cohen,* 604 A.2d 846, 849 (Del. 1992) (quoting *State v. Dixon,* 283 So.2d 1, 10 (Fla.1973)).

21. Del.Code Ann. tit. 11, § 4209(g)(2)(a) (2002).

22. *See id.*

23. *Red Dog v. State,* 616 A.2d at 310 (citing *Pennell v. State,* 604 A.2d 1368, 1370 (Del. 1992)).

24. *Red Dog v. State,* 616 A.2d 298, 310–11 (Del.1992) (citing *Pennell v. State,* 604 A.2d

1368, 1370 (Del.1992)); Del.Code Ann. tit. 11, § 4209(g)(2)(a) (2002).

25. *Id.* at 311; *see* Appendix A.

26. *Taylor v. State,* 822 A.2d 1052, 1057–58 (Del.2003). The full text of the *Taylor* decision and its appendix reflect no conceptual change in the universe of cases as including *all* cases with a penalty hearing that became final following a sentence of either life or death. Accord *Ferguson v. State,* 642 A.2d 772, 789 (Del.1994).

27. *Clark v. State,* 672 A.2d 1004, 1010 (Del. 1996).

Sentencing decisions always involve "difficult and uniquely human judgments that defy codification."[28] The General Assembly has provided sentencing judges with increased discretion as the Delaware death penalty statute has been amended over time to modify the role of the jury's recommendation.[29] This Court has consistently noted in its prior decisions involving proportionality review that "[a] definitive comparison of the 'universe' of cases is almost impossible."[30]

■ Even if a defendant receives a death sentence when the circumstances of the crime are similar to those of an offense for which a life sentence was imposed, the death sentence is not necessarily disproportionate where there is a discernible rational distinction between the cases.[31] The nature of the defendant's character and propensities will always be a discernable and variable distinction. Another discernible and variable distinction between cases is the quantitative and qualitative nature of any mitigating evidence. For example, in *Ashley v. State*, Robert Ashley was originally sentenced to death after a penalty hearing that included no mitigating evidence.[32] Following a new penalty hearing for the same crime, however, at which compelling mitigating evidence was presented, Robert Ashley received a life sentence.[33]

■ Recognizing that capital cases always involve a myriad of variables, this Court looks to the factual background in the universe of cases to determine the proportionality of the sentence imposed in the case on appeal.[34] In making the present determination of proportionality this Court has compared Starling's sentence with the penalties imposed in all Murder in the First Degree cases that have involved a penalty hearing and a sentence of either life or death that became final.[35] We have also considered objective factors such as "the gravity of the offense and the circumstances of the crime."[36]

Starling's case is similar to other cases within the applicable universe of cases where the death penalty has been imposed. First, like several other defendants sentenced to death in Delaware, Starling was found guilty of killing multiple victims.[37]

---

28. *Wright v. State*, 633 A.2d 329, 342–43 (Del. 1993) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 311, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (citation omitted)).

29. *See Starling v. State*, 882 A.2d 747, 759 (Del.2005) (discussing the 2003 amendment to Delaware's death-penalty statute).

30. *Red Dog v. State*, 616 A.2d at 311; *Dawson v. State*, 637 A.2d 57, 68 (Del.1994); *Sullivan v. State*, 636 A.2d 931, 950 (Del.1994).

31. *See Gregg v. Georgia*, 428 U.S. 153, 203, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976).

32. *Ashley v. State*, 798 A.2d 1019, 1024 (Del. 2002).

33. *Ashley v. State*, 897 A.2d 767, 2006 WL 797894, at *1 (Del. Mar.27, 2006).

34. *Clark v. State*, 672 A.2d 1004, 1010 (Del. 1996) (citing *Shelton v. State*, 652 A.2d 1, 6 (Del.1995)).

35. *Taylor v. State*, 822 A.2d 1052, 1057–58 (Del.2003); *Sullivan v. State*, 636 A.2d at 950 (citing *Red Dog v. State*, 616 A.2d at 311 (citing *Solem v. Helm*, 463 U.S. 277, 290–92, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983))).

36. *Sullivan v. State*, 636 A.2d at 950.

37. *Post–1991 Cases: See, e.g., Cabrera v. State*, 840 A.2d 1256, 1260 (Del.2004) (two teens shot in back of head); *Reyes v. State*, 819 A.2d 305, 308 (Del.2003) (co-defendant of Cabrera, two teens shot in back of head); *Clark v. State*, 672 A.2d 1004, 1007 (Del.1996) (execution of adoptive mother and father for money); *Weeks v. State*, 653 A.2d 266, 274 (Del. 1995) (two victims killed in "cold-blooded, calculated execution-style manner"); *Lawrie v. State*, 643 A.2d 1336, 1340 (Del.1994) (woman and three children killed by arson); *Red Dog v. State*, 616 A.2d 298, 302–03 (Del. 1992) (five deaths during the course of lengthy criminal career); *Pennell v. State*, 604 A.2d 1368, 1375 (Del.1992) (four female vic-

Second, like others sentenced to death in Delaware, Starling was found guilty of committing a cold-blooded, execution-style murder.[38] Third, like another defendant sentenced to death in Delaware, Starling was engaged in criminal conduct that resulted in the killing of a child who Starling knew was present at the time.[39]

The universe of cases reflects that any one of these three circumstances has properly resulted in the imposition of a death sentence. Starling combined all three of those circumstances in a single horrific homicidal episode: multiple deaths that resulted when he fatally wounded a child during the execution-style killing of an adult. Accordingly, this Court concludes that the Superior Court judge's imposition of a sentence of death upon Starling for each murder conviction was not disproportionate to the sentences that were imposed on other defendants in the relevant universe of cases.[40]

### Conclusion

This Court has concluded that the death sentence for Starling for each murder conviction was not imposed either arbitrarily or capriciously. This Court has also determined that Starling's death sentence for each murder conviction is not disproportionate to the sentences imposed in other First Degree Murder cases that have proceeded to a penalty hearing pursuant to the Delaware death penalty statute. Accordingly, the sentence of death for each murder conviction is affirmed.

The matter is remanded to the Superior Court for further proceedings consistent with this opinion. The Clerk of this Court is directed to cause a copy of this opinion to be delivered forthwith to the attorneys for the parties and to the Commissioner of the Department of Correction.

### APPENDIX A *

Name: Robert Ashley
Criminal ID: 9605003410
County: New Castle
Sentence: Life (following retrial and second penalty hearing)
Decision on appeal: 2006 WL 797894 (Del. Mar. 27, 2006)

tims of serial killer). *Pre–1991 cases: See, e.g., Deputy v. State,* 500 A.2d 581, 602 (Del. 1985) (elderly couple stabbed to death in failed robbery); *Flamer v. State,* 490 A.2d 104, 123–24 (Del.1983) (co-defendant of Deputy, murdered elderly couple in failed robbery); *Bailey v. State,* 503 A.2d 1210, 1211 (1984) (elderly couple shot in home invasion without provocation) and *Bailey v. State,* 490 A.2d 158, 173 (Del.1983). *But see, e.g., Flonnory v. State,* 893 A.2d 507, 513 (Del.2006) (double homicide; life sentence imposed following second penalty hearing); *Govan v. State,* 655 A.2d 307, 1995 WL 48359, at *1 (Del.Supr.) (double homicide; life sentence imposed).

**38.** *Ortiz v. State,* 869 A.2d 285, 311 (Del. 2005); *Ploof v. State,* 856 A.2d 539, 547 (Del. 2004); *Cabrera v. State,* 840 A.2d 1256, 1275 (Del.2004); *Swan v. State,* 820 A.2d 342, 362 (Del.2003); *Reyes v. State,* 819 A.2d 305, 318 (Del.2003); *Norcross v. State,* 816 A.2d 757, 769 (Del.2003); *Capano v. State,* 781 A.2d 556, 677 (Del.2001); *Clark v. State,* 672 A.2d 1004, 1010 (Del.1996); *Weeks v. State,* 653 A.2d 266, 274 (Del.1995).

**39.** *E.g., Lawrie v. State,* 643 A.2d 1336, 1350 (Del.1994) ("[D]espite knowing of the presence of young, helpless, and frightened children, Lawrie demonstrated no regard for [their] safety.").

**40.** Del.Code Ann. tit. 11, § 4209(g)(2)(a) (2002).

* The universe of cases prior to 1991 is set forth in appendices to prior opinions by this Court, and those appendices are incorporated herein by reference. *See, e.g., Lawrie v. State,* Del. Supr., 643 A.2d 1336, 1352–56 (1994).

Name: Meri-Ya C. Baker
Criminal ID: 90011925DI
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1993 WL 557951 (Del. Dec. 30, 1993)

Name: Jermaine Barnett
Criminal ID: 9506017682
County: New Castle
Sentence: Life imprisonment (following second penalty hearing)
Decision on appeal: 749 A.2d 1230 (Del.2000) (remanding for new sentencing)

Name: Hector S. Barrow
Criminal ID: 9506017661
County: New Castle
Sentence: Life imprisonment (following second penalty hearing)
Decision on appeal: 749 A.2d 1230 (Del.2000) (remanding for new sentencing)

Name: Tyreek D. Brown
Criminal ID: 9705011492
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1999 WL 485174 (Del. Mar. 1, 1999)

Name: Justin L. Burrell
Criminal ID: 9805012046
County: Kent
Sentence: Life imprisonment
Decision on appeal: 766 A.2d 19 (Del.2000)

Name: Luis G. Cabrera
Criminal ID: 9703012700
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 747 A.2d 543 (Del.2000)

Name: Luis G. Cabrera
Criminal ID: 9904019326
County: New Castle
Sentence: Death
Decision on appeal: 840 A.2d 1256 (Del.2004)

Name: Thomas J. Capano
Criminal ID: 9711006198
County: New Castle
Sentence: Death
Decision on appeal: 781 A.2d 556 (Del.2001)

Name: James B. Clark, Jr.
Criminal ID: 9406003237
County: New Castle
Sentence: Death
Decision on appeal: 672 A.2d 1004 (Del.1996)

Name: Charles M. Cohen
Criminal ID: 90001577DI
County: New Castle
Sentence: Life imprisonment
Decision on appeal: No direct appeal taken

Name: James T. Crowe, Jr.
Criminal ID: 9508008979
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1998 WL 736389 (Del. Oct. 8, 1998)

Name: David F. Dawson
Criminal ID: 88K00413DI
County: New Castle (venue changed)
Sentence: Death
Decision on appeal: 637 A.2d 57 (Del.1994)

Name: Byron S. Dickerson
Criminal ID: 90011926DI
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1993 WL 541913 (Del. Dec. 21, 1993)

Name: Cornelius E. Ferguson
Criminal ID: 91009926DI
County: New Castle
Sentence: Death
Decision on appeal: 642 A.2d 772 (Del.1994)

Name: Donald Flagg
Criminal ID: 9804019233
County: New Castle
Sentence: Life imprisonment
Decision on appeal: No direct appeal taken

Name: Freddy Flonnory
Criminal ID: 9707012190
County: New Castle
Sentence: Life imprisonment (following second penalty hearing)
Decision on appeal: 893 A.2d 507 (Del.2006)

Name: Sadiki J. Garden
Criminal ID: 9912015068
County: New Castle
Sentence: Life sentence ordered by Delaware Supreme Court
Decision on appeal: 844 A.2d 311 (Del.2004)

Name: Robert J. Garvey
Criminal ID: 0107010230
County: New Castle
Sentence: Life imprisonment
Appeal: 873 A.2d 291 (Del.2005)

Name: Robert A. Gattis
Criminal ID: 90004576DI
County: New Castle
Sentence: Death
Decision on appeal: 637 A.2d 808 (Del.1994)

Name: Arthur Govan
Criminal ID: 92010166DI
County: New Castle
Sentence: Life imprisonment

Decision on appeal: 1995 WL 48359 (Del. Jan. 30, 1995)

Name: Jason Anthony Hainey
Criminal ID: 0306015699
County: New Castle
Sentence: Life imprisonment
Appeal: 878 A.2d 430 (Del.2005)

Name: Robert W. Jackson, III
Criminal ID: 92003717
County: New Castle
Sentence: Death
Decision on appeal: 684 A.2d 745 (Del.1996)

Name: David Jones
Criminal ID: 9807016504
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 798 A.2d 1013 (Del.2002)

Name: Michael Keyser
Criminal ID: 0310021647
County: Kent
Sentence: Life imprisonment
Decision on appeal: 893 A.2d 956 (Del.2006)

Name: David J. Lawrie
Criminal ID: 92K03617DI
County: Kent
Sentence: Death
Decision on appeal: 643 A.2d 1336 (Del.1994)

Name: Thomas M. Magner
Criminal ID: 9509007746
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1998 WL 666726 (Del. July 29, 1998)

Name: Frank W. Moore, Jr.
Criminal ID: 92S03679DI
County: Sussex
Sentence: Life imprisonment
Decision on appeal: 1994 WL 202289 (Del. May 9, 1994)

Name: Adam Norcross
Criminal ID: 0002006278A
County: Kent
Sentence: Death
Decision on appeal: 816 A.2d 757 (Del.2003)

Name: Juan Ortiz
Criminal ID: 0104013797
County: Kent
Sentence: Death
Decision on appeal: 869 A.2d 285 (Del.2005)

Name: Jack F. Outten
Criminal ID: 92000786DI
County: New Castle

Sentence: Death
Decision on appeal: 650 A.2d 1291 (Del.1994)

Name: James W. Perez
Criminal ID: 93001659
County: New Castle
Sentence: Life imprisonment
Decision on appeal: No. 207, 1993, Moore, J. (Del. Feb. 3, 1994)

Name: Gary W. Ploof
Criminal ID: 0111003002
County: Kent
Sentence: Death
Decision on appeal: 856 A.2d 539 (Del.2004)

Name: James Allen Red Dog
Criminal ID: 91001754DI
County: New Castle
Sentence: Death
Decision on appeal: 616 A.2d 298 (Del.1992)

Name: Luis Reyes
Criminal ID: 9904019329
County: New Castle
Sentence: Death
Decision on appeal: 819 A.2d 305 (Del.2003)

Name: James W. Riley
Criminal ID: 0004014504
County: Kent
Sentence: Life imprisonment (following retrial)
Decision on appeal: 2004 WL 2085525 (Del. Oct. 20, 2004)

Name: Jose Rodriguez
Criminal ID: 93001668DI
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 1994 WL 679731 (Del. Nov. 29, 1994)

Name: Richard Roth, Jr.
Criminal ID: 9901000330
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 788 A.2d 101 (Del.2001)

Name: Reginald N. Sanders
Criminal ID: 91010161DI
County: New Castle (venue changed)
Sentence: Life imprisonment (following 1992 resentencing)
Decision on appeal: 585 A.2d 117 (Del.1990) (remanding for new sentencing)

Name: Nelson W. Shelton
Criminal ID: 92000788DI
County: New Castle
Sentence: Death
Decision on appeal: 652 A.2d 1 (Del.1995)

Name: Steven W. Shelton
Criminal ID: 92000787DI

| | |
|---|---|
| County: | New Castle |
| Sentence: | Death |
| Decision on appeal: | 650 A.2d 1291 (Del.1994) |

| | |
|---|---|
| Name: | Donald J. Simmons |
| Criminal ID: | 92000305DI |
| County: | New Castle |
| Sentence: | Life imprisonment |
| Decision on appeal: | No direct appeal taken |

| | |
|---|---|
| Name: | Brian David Steckel |
| Criminal ID: | 9409002147 |
| County: | New Castle |
| Sentence: | Death |
| Decision on appeal: | 711 A.2d 5 (Del.1998) |

| | |
|---|---|
| Name: | Willie G. Sullivan |
| Criminal ID: | 92K00055 |
| County: | Kent |
| Sentence: | Death |
| Decision on appeal: | 636 A.2d 931 (Del.1994) |

| | |
|---|---|
| Name: | Ralph Swan |
| Criminal ID: | 0002004767A |
| County: | Kent |
| Sentence: | Death |
| Decision on appeal: | 820 A.2d 342 (Del.2003) |

| | |
|---|---|
| Name: | Antonio L. Taylor |
| Criminal ID: | 9404018838 |
| County: | Kent |
| Sentence: | Life imprisonment |
| Decision on appeal: | 685 A.2d 349 (Del.1996) |

| | |
|---|---|
| Name: | Milton Taylor |
| Criminal ID: | 0003016874 |
| County: | New Castle |
| Sentence: | Death |
| Decision on appeal: | 822 A.2d 1052 (Del.2003) |

| | |
|---|---|
| Name: | Desmond Torrence |
| Criminal ID: | 0205014445 |
| County: | New Castle |
| Sentence: | Life imprisonment |
| Decision on appeal: | 2005 WL 2923501 (Del. Nov. 2, 2005) |

| | |
|---|---|
| Name: | Charles H. Trowbridge |
| Criminal ID: | 91K03044DI |
| County: | Kent |
| Sentence: | Life imprisonment |
| Decision on appeal: | 1996 WL 145788 (Del. Mar. 4, 1996) |

| | |
|---|---|
| Name: | James W. Virdin |
| Criminal ID: | 9809015552 |
| County: | Kent |
| Sentence: | Life imprisonment |
| Decision on appeal: | 780 A.2d 1024 (Del.2001) |

| | |
|---|---|
| Name: | John E. Watson |

Criminal ID: 91008490DI
County: New Castle
Sentence: Life imprisonment
Decision on appeal: No direct appeal taken

Name: Dwayne Weeks
Criminal ID: 92010167
County: New Castle
Sentence: Death
Decision on appeal: 653 A.2d 266 (Del.1995)

Name: Joseph Williams
Criminal ID: 9809018249
County: New Castle
Sentence: Life imprisonment
Decision on appeal: 2003 WL 1740469 (Del. Apr. 1, 2003)

Name: Roy R. Williamson
Criminal ID: 93S02210DI
County: Sussex
Sentence: Life imprisonment
Decision on appeal: 669 A.2d 95 (Del.1995)

Name: Jermaine M. Wright
Criminal ID: 91004136
County: New Castle
Sentence: Death
Decision on appeal: 671 A.2d 1353 (Del.1996)

Name: Craig A. Zebroski
Criminal ID: 9604017809
County: New Castle
Sentence: Death
Decision on appeal: 715 A.2d 75 (Del.1998)