David JONES, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 293, 2000.

Supreme Court of Delaware.

Submitted: March 21, 2002.

Decided: June 7, 2002.

Edmund M. Hillis (argued), Todd E. Conner, Assistant Public Defenders, Office of the Public Defender, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr. (argued), Elizabeth R. McFarlan, Deputy Attorneys General, Department of Justice, Wilmington, Delaware, for appellee.

Before VEASEY, Chief Justice, WALSH, HOLLAND, BERGER, and STEELE, Justices, constituting the Court en Banc.

VEASEY, Chief Justice:

In this case we consider whether the trial court properly admitted a murder victim's hearsay statements regarding her intent to end her relationship with the defendant and her belief that the relationship was over and, if so, whether the trial court was required to issue an accompanying limiting instruction. We reaffirm that

a homicide victim's hearsay statements are admissible under D.R.E. 803(3)[1] if they express the victim's then existing state of mind or intended future conduct[2] and are relevant to proving the defendant's motive to kill. Because the statements in this case did not reflect on the defendant's character or past conduct and could be interpreted by the jury to imply only that the defendant had a motive to kill, we hold that a limiting instruction was unnecessary. Finally, we note that any error regarding the admission of the victim's statements would have been harmless beyond a reasonable doubt because the other evidence presented at trial overwhelmingly weighed against the defendant. Accordingly, we affirm the judgment of the Superior Court.

### Facts

David Jones and Yvette McNair were a couple with one daughter. They had discussed marriage and lived together for some time with their daughter and McNair's two sons from a previous relationship. But, by the summer of 1998, they were living apart and their relationship seemed to be souring. McNair told Marie Queen, stepmother of her sons and a close friend, that she had ended or was about to end the relationship, was not going to celebrate Jones' birthday, and had packed up the clothes he kept at her apartment. Jones told others about his dissatisfaction with the relationship and stated that he wanted sole custody of his daughter. One of Jones' coworkers also overheard him calling gun shops and attempting to purchase a gun. A few days later,

on the morning of July 24, 1998, McNair was shot nine times to her death in front of the apartment she shared with her children. A number of witnesses stated that they saw Jones leaving the apartment building that morning shortly after they heard gunshots. As a result, Jones was indicted for various crimes stemming from McNair's death, including first degree murder.

During the jury trial, Jones objected to Queen's testimony recounting McNair's statements on the ground that such testimony constituted inadmissible hearsay. The trial court overruled Jones' objection, citing the state of mind exception to the hearsay rule in D.R.E. 803(3). Jones then requested that the trial court issue a specific limiting instruction to the jury regarding Queen's testimony. After considering the specific instruction, the trial court rejected it as an incorrect statement of the law in this case. Jones renewed his objection right before the trial court issued its final instructions to the jury and the trial court again overruled it.

The jury convicted Jones of first degree murder and possession of a firearm during the commission of a felony. After a penalty hearing, the jury found by a vote of twelve to zero that McNair was pregnant at the time of her murder and that the murder was premeditated and the result of substantial planning. In light of these statutory aggravating factors, the jury also recommended by a vote of seven to five that the aggravating circumstances outweighed the mitigating ones. The Superior Court, however, declined to impose the

1. D.R.E. 803(3) states that hearsay is admissible if it is a "statement of the declarant's then existing state of mind, emotion sensation or physical condition (such as intent, plan, motive, mental feeling, pain and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification or terms of declarant's will."

2. *Forrest v. State*, 721 A.2d 1271 (Del.1999) (affirming holding in *Derrickson v. State*, 321 A.2d 497 (Del.1974)).

death penalty and instead ordered the consecutive sentences of life in prison without the possibility of parole for the murder conviction and twenty years in prison for the possession of a firearm during the commission of a felony conviction. This is Jones' direct appeal.

### *Issues on Appeal*

Jones claims on appeal that the trial court erred by admitting Queen's testimony recounting McNair's statements about her relationship with Jones and, even if this testimony were admissible, the trial court was required to issue an accompanying limiting instruction to the jury. We reject both claims and note that any error regarding the admission of this testimony would have been harmless beyond a reasonable doubt because, even without this testimony, this was not a close case.

■ Jones first claims that the trial court erred by overruling his hearsay objection and admitting Queen's testimony recounting McNair's statements days before her death that the relationship with Jones was over, she had packed up his clothes at her apartment, and she was not going to celebrate his upcoming birthday. The trial court agreed with Jones that Queen's testimony constituted hearsay but admitted the testimony under the state of mind exception to the hearsay rule in D.R.E. 803(3). We review for an abuse of

discretion the Superior Court's admission of evidence.[3]

■ "D.R.E. 803(3) provides an exception to the hearsay rule, regardless of whether the declarant is available to testify, for a then existing mental, emotional or physical condition."[4] This Court also requires that the hearsay statement be sufficiently trustworthy before its admission under D.R.E. 803(3).[5] Accordingly, the hearsay statement must (1) be relevant and material, (2) relate to an existing state of mind when made, (3) be made in a natural manner, (4) be made under circumstances dispelling suspicion, and (5) contain no suggestion of sinister motives for making the statement.[6]

■ McNair's hearsay statements fulfill all these requirements. First, the State introduced McNair's statements to Queen shortly before her death to show her present or then existing state of mind, specifically her belief that the relationship with Jones was over and her intent to end that relationship. Second, McNair's statements regarding her state of mind were relevant and material because they tend to show that Jones more likely than not had a motive to kill McNair.[7] As we stated in *Gattis v. State*, "[i]n a prosecution for homicide arising out of a marital or romantic relationship, evidence of ... discord between the victim and the defendant is clearly material to issues of motive and intent."[8] Where, as here, relationship dis-

---

3. *Capano v. State*, 781 A.2d 556, 607 (Del. 2001) (citing *Williamson v. State*, 707 A.2d 350, 354 (Del.1998)).

4. *Forrest*, 721 A.2d at 1275. *See also Shepard v. United States*, 290 U.S. 96, 105, 106, 54 S.Ct. 22, 78 L.Ed. 196 (1933) (holding that hearsay testimony regarding the declarant's intended future acts or present state of mind is admissible).

5. *Forrest*, 721 A.2d at 1276 (citing and reaffirming *Derrickson*, 321 A.2d at 503).

6. *Id.*

7. *See* D.R.E. 401 (evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence").

8. *Gattis v. State*, 637 A.2d 808, 818 (Del.1994) (rejecting defendant's claim that the victim's statements to third parties expressing her intention to terminate her relationship with defendant were not admissible) (citing *Hutchins*

cord, motive, and premeditation are all at issue, the statements of the victim expressing her then existing intent to end her relationship with the defendant are admissible to show the effect they had on the defendant and that the defendant, as a spurned lover, had a motive to kill the victim.[9] Third, nothing in the record indicates that McNair had any reason to fabricate her state of mind regarding her relationship with Jones or her intent to end that relationship. Finally, even though there was no concrete evidence presented at trial that Jones was aware of her intent to end the relationship, McNair's statements were admissible. It was permissible for the jury to infer from McNair's statements that she acted in accordance with her plan to end the relationship with Jones and that Jones thereby had a motive for murder.[10] The Superior Court thus did not abuse its discretion by admitting McNair's statements pursuant to D.R.E. 803(3).

Jones responds that, even if McNair's statements were admissible, the trial court was required to issue an accompanying limiting instruction to the jury. After the trial court overruled Jones' objection to Queen's testimony about McNair's remarks and again before the court delivered final instructions to the jury, Jones requested that the trial court issue a limiting instruction to the jury. The court responded that it would consider issuing such an instruction and asked Jones to propose one. Jones requested that the court issue the following limiting instruction to the jury:

> You are instructed that this testimony is to be considered by you only in connection with evaluating the present purpose of intent of the deceased at the time when the statements were made, and its effect, if any, on her subsequent conduct. You are not to consider this testimony to evaluate the intent or conduct of the defendant.[11]

The trial court rejected this instruction on the ground that the jury may infer from McNair's statements that Jones had a motive to kill her and indeed may have acted upon that motive. Jones also claims for the first time on appeal that the trial court was required to issue an alternative limiting instruction pursuant to D.R.E. 105, which states that the court, upon request, shall restrict evidence to its proper scope and instruct the jury accordingly.[12]

■ This Court reviews the trial court's rejection of Jones' proposed jury instruc-

---

v. *State*, 153 A.2d 204, 207 (Del.1959) ("In the case of a defendant on trial for wife murder, such evidence has frequently been admitted for the purpose of showing quarrels or discord or assault as evidencing the state of mind of accused or malice.")).

9. *Capano*, 781 A.2d at 615 (holding that hearsay testimony regarding the victim's then existing state of mind was relevant to prove (1) that the victim sought to end her romantic involvement with the defendant and (2) that the defendant, as the spurned lover, therefore had a motive to kill her).

10. *Id.* at 608 (citing *United States v. Donley*, 878 F.2d 735, 738 (3rd Cir.1989)) ("The government properly sought to persuade the jury

to infer from [the victim's] statements that she had [a plan to move out and separate from her husband] and, in turn, to infer from that plan ... the defendant's awareness of it [and] that he had a motive for murder.") (citing *Mutual Life Ins. Co. v. Hillmon*, 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706) (1892))).

11. *State v. MacDonald*, 598 A.2d 1134, 1140 n. 4 (Del.Super.1991).

12. D.R.E. 105 states in its entirety: "When evidence which is admissible to 1 party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."

tion regarding the admission of evidence for an abuse of discretion.[13] Because Jones' failed to raise his D.R.E. 105 claim below, we review it for plain error.[14]

"As a general rule, a defendant is not entitled to a particular instruction, but he does have the unqualified right to a correct statement of the substance of the law."[15] The trial court properly rejected Jones' proposed instruction because the jury may infer from McNair's statements that Jones had a motive to kill her and thus may have indeed acted upon that motive and killed her.[16] Thus, as the trial court noted, the proposed instruction was not a correct statement of the substance of the law because it would have prevented the jury from using McNair's statements to their fullest admissible extent and from inferring that Jones may have acted in response to McNair's intended plan to end the relationship and killed her.

The trial court also did not commit plain error by failing to issue an alternative limiting instruction regarding McNair's statements. The victim's statements in this case could not be interpreted by the jury to prejudice the defendant unfairly. The statements at issue in this case did not reflect negatively on the defendant's character or past conduct[17] but rather reflected on the victim's state of mind regarding the status of her relationship with Jones and her own intended future conduct. McNair's statements did not support any rational inferences by the jury that reflected on Jones except that he had a motive to kill McNair. Such an inference is totally permissible under the law and consequently no limiting instruction was required.

Furthermore, even if the trial court had committed error by failing to issue a limiting instruction to the jury regarding McNair's statements, any error was harmless beyond a reasonable doubt because this was not a close case.[18] Jones' co-worker testified that Jones asked him shortly before the murder if he knew where Jones could purchase a gun and later heard Jones on the phone attempting to buy a gun. Jones' work supervisor stated that Jones told him he was not getting along well with McNair and that he wanted custody of their daughter. Four other witnesses testified they saw Jones leaving McNair's apartment after hearing gunshots or loud noises the morning of her death. Another witness, who lived across the hall from McNair, testified she saw Jones running out of the apartment complex's courtyard with his daughter and that she then discovered McNair's body lying in the hallway. Thus, any error

**13.** *Williamson,* 707 A.2d at 354.

**14.** Supr.Ct.R. 8; *Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

**15.** *Flamer v. State,* 490 A.2d 104, 128 (Del. 1983) (quoted in *Bullock v. State,* 775 A.2d 1043, 1047 (Del.2001)).

**16.** *Gattis,* 637 A.2d at 818; *Capano,* 781 A.2d at 615; *Donley,* 878 F.2d at 738.

**17.** *See, e.g., Flonnory v. State,* 778 A.2d 1044, 1055 (Del.2001) (requiring a limiting instruction under D.R.E. 105 regarding defendant's prior bad acts); *Milligan v. State,* 761 A.2d 6,

9 (Del.2000) (requiring such an instruction regarding defendant's uncharged criminal activity); *Wilson v. Sico,* 713 A.2d 923, 925 (Del.1998) and *Desmond v. State,* 654 A.2d 821, 826 (Del.1994) (both requiring such an instruction regarding defendant's prior conviction); *Simpson v. State,* 608 A.2d 730 (Del. 1991) (requiring such an instruction regarding photos taken by the defendant of the partially clothed rape victim).

**18.** *Capano,* 781 A.2d at 618 (stating that a conviction and sentence can stand despite error in the admission of evidence if such error was harmless beyond a reasonable doubt).

in this case regarding the admission of McNair's statements would have been harmless beyond a reasonable doubt.

### Conclusion

The victim's statements regarding her then existing state of mind and intended future acts were properly admitted pursuant to D.R.E. 803(3). Because the statements imply only that Jones had a motive to kill the victim and do not reflect negatively on the defendant's character or past behavior, an accompanying limiting instruction was unnecessary. Although we perceive no error in the trial court's judgment regarding the admission of the victim's statements, any such error would have been harmless beyond a reasonable doubt. Accordingly, we affirm the judgment of the Superior Court.