Michael R. MANLEY, Defendant Below–Appellant,

v.

STATE of Delaware Plaintiff Below, Appellee.

David Stevenson, Defendant Below–Appellant,

v.

State of Delaware Plaintiff Below, Appellee.

Nos. 75/82,2006, 76/86,2006.

Supreme Court of Delaware.

Submitted: Oct. 4, 2006.

Decided: Jan. 3, 2007.

Joseph M. Bernstein (argued) and Joseph A. Gabay, Wilmington, DE, for Appellant Michael Manley.

Michael C. Heyden (argued) and Jerome Capone, Wilmington, DE, for Appellant David Stevenson.

Loren C. Myers, Department of Justice, Wilmington, DE, for Appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

RIDGELY, Justice:

Defendants–Appellants David Stevenson and Michael R. Manley appeal their sentences of death ordered by the Superior Court after a penalty hearing for the murder of a witness to be called against Stevenson in a criminal trial. Stevenson presents two arguments on appeal. First, Stevenson argues that the trial court committed an error of law by instructing the jury on accomplice liability at the penalty phase of the proceeding. Second, Stevenson asserts that he was not eligible to be sentenced to death under the *Enmund/Tison* decisions of the United States Supreme Court.[1] Manley also makes these same two arguments, and further claims that there was insufficient evidence to support the jury's finding that two statutory aggravators had been established in his case. We find no merit to these appeals and affirm.

## I. Procedural Background

After a joint Superior Court trial, a jury found both Defendants guilty of First Degree Murder and related charges. The Superior Court followed the jury's recommendations at the penalty phase and sentenced both Defendants to death. That sentence was affirmed on direct appeal.[2] On January 25, 1999, Manley filed a motion, pursuant to Superior Court Rule 61, for Post–Conviction Relief. The Superior Court denied that motion. On appeal, however, this Court vacated the death sentence and ordered a new penalty hearing.[3] On September 7, 2001, Manley filed an "Amended and Restated Motion for Post–Conviction Relief." Before that motion was decided, the United States Supreme Court decided *Ring v. Arizona.*[4] Manley then filed a separate motion to bar the Superior Court from holding a new penalty hearing. The Superior denied the motion, and this Court affirmed that denial on April 7, 2004.[5]

A second penalty hearing was held on November 8, 2005. The jury found unanimously and beyond a reasonable doubt that three statutory aggravators had been established as to each Defendant. They recommended the death sentence by a vote of 11 to 1 for Manley and 10 to 2 for Stevenson. On February 3, 2006, the Superior Court issued its sentencing decision and imposed the death penalty for both Manley and Stevenson. Defendants' appeals to this Court have been consolidated.

## II. Facts

In 1994, Stevenson was employed by Macy's Department Store in the Christiana Mall. While employed at Macy's, Stevenson used customers' credit card information to issue false gift certificates. Macy's security department employees, Parminder Chona ("Chona") and Kristopher Heath ("Heath"), investigated the matter. Stevenson was subsequently charged with theft and the matter was scheduled for trial in the Superior Court.

---

1. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982); *Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987).

2. *Manley v. State,* 709 A.2d 643 (Del.1998) (*Manley I*); *Stevenson v. State,* 709 A.2d 619 (Del.1998) (*Stevenson I*)

3. *Stevenson v. State,* 782 A.2d 249, 260–61 (Del.2001) (*Stevenson II*).

4. *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002).

5. *Manley v. State,* 846 A.2d 238 (Del.2004) (TABLE).

On the evening prior to the Stevenson's scheduled court date, a black male wearing a long puffy black jacket knocked on the door to Heath's residence. His fiancée, Deborah Dorsey, answered. Dorsey informed the male that Heath was not home and the individual departed. Dorsey called Heath to tell him about the incident and that she was frightened. She also noted that the individual was not Stevenson, as she would have recognized him from her employment at Macy's.

On the morning of November 13, 1995, Heath was murdered in the parking lot of his residence at the Cavalier Country Club Apartments. Heath was shot in the back five times with a nine-millimeter handgun. The murder occurred on the same morning that Heath was to testify against Stevenson at his criminal trial. Upon hearing the gunfire, several residents at the apartment complex called the police.

One resident, Lance Thompson, informed the police that he observed a black male run to and enter a mid-sized blue vehicle with faded and peeling paint. Thompson saw the license plate number and gave it to the police. At this time, Patrolman Daniel Meadows of the New Castle County Police broadcast the license plate number and vehicle description over the police radio. It was soon discovered that the license plate was registered to Stevenson and his mother at 206 West 20th Street in Wilmington, Delaware.

Wilmington Police arrived in two squad cars at 206 W. 20th Street. The officers saw a car fitting the description given by Meadows arrive at the same time with two black men inside. The passengers started to exit the vehicle but reentered after ob-serving the approaching officers. The suspects drove away with the patrol cars in pursuit. After a short chase, the suspects fled on foot and were taken into custody.

■ The occupants of the vehicle were Manley and Stevenson. Manley matched the description of the shooter given by many eyewitnesses. After Stevenson was apprehended and brought to police headquarters, police searched the patrol car used to transport him. On the floor was a slip of paper with the name, address and phone number of Chona, the other Macy's employee who investigated Stevenson for the theft along with Heath.

### III. The Accomplice Liability Instruction

■ Both Defendants contend that the trial court erred as a matter of law by reading to the jury in the second penalty hearing an accomplice liability instruction that had been given to the original jury during the trial. The judge did this to provide the new jury with the background of the proceedings leading to the convictions at the guilt phase. Stevenson and Manley objected, claiming that the jury would interpret the comments of the judge to mean that they could impose vicarious liability, for either statutory aggravating circumstances or for a non-statutory aggravating circumstance, on one or both of the Defendants. Their objections were overruled. We review this claim of error de novo.[6]

■ The focus of our review is to determine "whether there is a reasonable likelihood that the [challenged jury instruction] undermined the ability of the jury to accurately perform its duty in returning a sentence recommendation."[7] It

**6.** *Floray v. State,* 720 A.2d 1132, 1138 (Del. 1998). *Cf. Childress v. State,* 721 A.2d 929, 932 (Del.1998) ("We review *de novo* the trial court's comments to the jury to determine

whether they were improper and require reversal.").

**7.** *Dawson v. State,* 581 A.2d 1078, 1105 (Del. 1990), *vacated on other grounds,* 503 U.S. 159,

is well-settled that an "instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." [8]

When the jury charge is viewed as a whole, it is clear that the judge's explanation did not undermine the jury's ability to accurately perform its duty. The trial judge explained to the jury that he was providing them with background to provide "the complete picture of this indictment and the defendants' convictions." [9] The trial judge further explained that "[e]ven though the defendants were convicted of first degree murder, the jury in the earlier trial was not asked to decide which defendant shot Kristopher Heath." Without that instruction, the jury in the penalty phase may have speculated how both Defendants were convicted of murder. By reading that instruction and thereby providing the basis of the charges and prior convictions, the judge helped the jury understand how and why the case was before them. To the benefit of both Defendants, he made clear that the prior jury had not decided who the shooter was. The trial judge did not tell the jury, nor did he imply, that they could rely upon vicarious liability to establish the existence of an aggravating circumstance for either Defendant.

Importantly, the jury could not have based its findings on the statutory aggravators by applying the accomplice liability instruction in this case. The first aggravator, which the jury found had been established as to both Stevenson and Manley, focuses on the status of the victim. [10] That factor has nothing to do with the Defendants' status as accomplices, but rather focuses on the status of the victim and the reason why he was killed. Thus, the instruction did not in any way aid the jury in finding this factor had been established.

Also it is clear that the instruction did not affect the jury in finding the other aggravating factors. The second aggravator found in Stevenson's case focuses on the individualized actions of Stevenson, namely, that "Defendant Stevenson caused or directed Defendant Michael Manley to commit murder." The jury unanimously found this aggravator present.

With regard to Manley, the jury found that he "committed murder as an agent of Defendant Stevenson." It was reasonable for the jury to infer that Manley did not know Heath personally, but knew about him only through Stevenson, who was the only Defendant with a clear motive to kill Heath because Heath was to testify against him in a criminal trial. Thus, it was reasonable for the jury to conclude that Manley was Stevenson's agent without regard to accomplice liability.

The final aggravator, [11] that "[t]he murder was the result of substantial planning,"

112 S.Ct. 1093, 117 L.Ed.2d 309 (1992).

**8.** *Boyde v. California,* 494 U.S. 370, 378, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990).

**9.** The trial judge instructed the jury as follows:

In order for you to have the complete picture of this indictment and the defendants' convictions, you need to know a principle of law which was given to the jury in the earlier trial regarding four of the offenses of which they were charged and convicted. Those four charges are in Count I, the charge of murder first degree, and Counts 2, 4 and 5. The principle of law given to the earlier jury is known as accomplice liability. Here is the instruction given to the jury on that principle.

**10.** "The murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing the witness' appearance and testimony in a criminal proceeding involving such a crime."

**11.** The third aggravator in case was not unanimously found to be proven beyond a reasonable doubt. It read: "At the time of the

was found to be proven beyond a reasonable doubt. The jury found this factor to be present for both Stevenson and Manley. The court instructed that a murder is premeditated if the "defendant thought about it, considered it or deliberated about it beforehand," and explained substantial planning as "planning that is considerable and ample for the commission of a crime." Premeditation and substantial planning could be the result of two people acting together to carry out a crime, but the Defendants' status as accomplices would not affect the jury's determination that Stevenson himself engaged in substantial planning to kill Heath. Accordingly, we find no error by the Superior Court in explaining the charges and the principle of law under which the Defendants were convicted.

## IV. Eligibility for Capital Punishment Under the *Enmund/Tison* Line of Cases

■ The Defendants' next contend that they were not eligible to be sentenced to death under the *Enmund/Tison* line of cases. They argue that the trial court erred as a matter of law in refusing to submit their proposed *Enmund/Tison* interrogatories to the jury. We review this claim *de novo*.[12]

In *Enmund v. Florida*, the United States Supreme Court held that the Eighth and Fourteenth Amendments preclude the imposition of a death sentence on a defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed."[13] That standard was later elucidated in *Tison v. Arizona*,[14] in which the United States Supreme Court held that "major participation in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement."[15]

The Superior Court did not err in finding that *Enmund/Tison* did not preclude the death sentence in either Stevenson or Manley's case. Both Defendants were convicted of first degree murder. The record shows that the jury found that Stevenson and Manley had either intentionally killed Heath, or under accomplice liability, that one of the Defendants had intentionally aided, counseled, or agreed to aid the other in committing the murder. By definition, under either scenario, both Defendants were major participants and acted with specific intent. Thus, the "recklessness" standard required by *Tison* was clearly satisfied in this case. Accordingly, the Superior Court did not err by denying

---

killing the victim had provided a police agency with information concerning criminal activity and this killing was in retaliation for the victim's activity in providing information concerning criminal activity to a police agency." As to Manley, seven jurors found this factor present, and as to Stevenson, nine jurors found it present.

12. *Floray*, 720 A.2d at 1138.

13. *Enmund v. Florida*, 458 U.S. 782, 797, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982).

14. *Tison v. Arizona*, 481 U.S. 137, 158, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987) (*"Enmund*

held that 'when intent to kill' results in its logical though not inevitable consequence— the taking of human life—the Eight Amendment permits the State to exact the death penalty after a careful weighing of the aggravating and mitigating circumstances. Similarly, we hold that the reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.").

15. *Id.* at 156, 107 S.Ct. 1676.

Stevenson's request for an *Enmund/Tison* instruction or interrogatory to be submitted to the jury.

## V. Manley's Motion for Judgment of Acquittal and Proportionality Review of the Sentences Imposed.

■ Manley makes an additional argument, namely, that the trial court's denial of his motion for acquittal as to two alleged statutory aggravating factors was incorrect as a matter of law. We review the denial of a motion for acquittal *de novo* to determine, "whether any rational trier of fact, viewing the evidence in the light most favorable to the State, could find the defendant guilty beyond a reasonable doubt." [16] Manley's argument requires this Court to review the evidence supporting the statutory aggravators that the jury found to be present in his case. Because this Court is required by statute to perform such an analysis,[17] we will address Manley's final argument in conjunction with the performance of our statutory duty. Under 11 *Del. C.* § 4209(g), this Court must independently review each Defendant's death sentence to determine whether: (1) the evidence supports, beyond a reasonable doubt, the jury's finding of at least one statutory aggravating circumstance; (2) the sentence was arbitrarily or capriciously imposed or recommended; and (3) the sentence is dis-

proportionate to the penalty imposed in similar cases.[18]

### A.

■ With regard to Stevenson, the evidence supports the jury's finding of the presence of three aggravating circumstances. Heath was one of two investigators scheduled to testify against Stevenson, and the name and address of the other investigator, also scheduled to testify, was found in a police car that only Stevenson occupied. The murder occurred just hours before Heath was scheduled to testify. The evidence supports the jury's finding that the murder was committed against a person who was a witness to a crime and who was killed for the purpose of preventing the witness' appearance and testimony in a criminal proceeding.

■ The evidence also supports the jury's finding that Stevenson directed Manley to kill Heath. Stevenson had a clear motive to kill Heath, who was scheduled to testify against him. Manley, on the other hand, did not have any motive to kill Heath. Manley only knew of Heath because of his relationship with Stevenson.

■ Finally, the evidence supports the jury's finding that the murder was premeditated and the result of substantial planning. Stevenson laid in wait for Heath to leave his apartment complex that

---

**16.** *Priest v. State*, 879 A.2d 575, 580 (Del. 2005) (citing *Couch v. State*, 823 A.2d 491 (Del.2003)).

**17.** 11 *Del. C.* § 4209(g)(2).

**18.** *Swan v. State*, 820 A.2d 342, 359 (Del. 2003); 11 *Del. C.* § 4209(g)(2) provides:
The Supreme Court shall limit its review under this section to the recommendation on and imposition of the penalty of death and shall determine:
a. Whether, considering the totality of evidence in aggravation and mitigation which

bears upon the particular circumstances or details of the offense and the character and propensities of the offender, the death penalty was either arbitrarily or capriciously imposed or recommended, or disproportionate to the penalty recommended or imposed in similar cases arising under this section.
b. Whether the evidence supports the jury's or the judge's finding of a statutory aggravating circumstance as enumerated in subsection (e) of this section and, where applicable, § 636(a)(2)-(7) of this title.

morning. An eye witness, Michel Chandler, placed Stevenson and Manley in the parking lot of Heath's apartment shortly before the murder. Manley's appearance at Heath's residence the evening before the murder is also supportive of the jury's finding. Moreover, it would have been reasonable for the jury to conclude that, based on the handwritten note containing Chona's name and address, the Defendants planned to kill both investigators to prevent them from testifying against Stevenson.

■ We next turn to whether the sentence imposed was arbitrary and capricious. A judge's decision is not arbitrary and capricious if the decision is "the product of a deliberate, rational and logical deductive process."[19] In reaching his decision in this case, the judge considered numerous aggravating and mitigating circumstances. He considered the following aggravating circumstances: Heath was scheduled to testify that day against Stevenson, Stevenson's theft from Macy's, the handwritten note with Chona's name on it, Stevenson's disciplinary incidents during his ten years in prison, the impact on Heath's family and girlfriend, and the fact that Heath was an innocent and unarmed victim. The judge balanced those aggravating factors against several mitigating factors, including: Stevenson's lack of a criminal record, his young age, his academic achievements, his positive relationship with family and friends, and that fact that Stevenson claims that the shooter was done by a third party, Manley. The evidence supports the judge's determination, consistent with the jury's recommendation, that the aggravating factors outweighed the mitigating factors.

■ Finally, this Court must determine if Stevenson's sentence is disproportionate to the penalty imposed in similar cases. This Court has held that cases involving a deliberate, cold-blooded, execution-style killing are deserving of the death penalty.[20] This case fits the pattern of cases deserving of the death penalty as reflected in the applicable universe of cases.[21]

### B.

In Manley's case, the prosecution alleged four statutory aggravating circumstances: (1) Heath was killed to prevent his appearance as a witness in a criminal case; (2) Manley committed murder as Stevenson's agent; (3) Heath was killed in retaliation for providing information to the police; and (4) the murder was premeditated and the result of substantial planning. The jury found unanimously that the prosecution had proven the first, second and fourth alleged statutory aggravators beyond a reasonable doubt.

■ To establish the first aggravator, the prosecution had to prove beyond a reasonable doubt that Heath was a witness to a crime; that Heath was killed to prevent his appearance and testimony in a criminal proceeding involving that crime;

---

19. *Red Dog v. State*, 616 A.2d 298, 310 (Del. 1992).

20. *Ortiz v. State*, 869 A.2d 285, 311 (Del. 2005); *Ploof v. State*, 856 A.2d 539, 547 (Del. 2004); *Pennell v. State*, 604 A.2d 1368, 1377 (Del.1992) ("Pennell, like other defendants sentenced to death in Delaware, was found guilty of committing the unprovoked, cold-blooded, execution-style murders of persons who lacked the ability to defend themselves."); *DeShields v. State*, 534 A.2d 630, 649 (Del.1987) ("[T]his case fits into the pattern of the other cases in which the death penalty has been imposed; i.e., an execution-type slaying of a helpless victim in cold blood.").

21. *See* 11 *Del. C.* § 4209(g)(2)(a); Appendix A.

and that Manley knew of Heath's status as a witness. Manley contends that there is no evidence showing that he knew of Heath's status as a witness.

It was reasonable for the jury to conclude that Manley was aware of Heath's status as a witness. At the time of the murder, Manley was with Stevenson and Stevenson clearly knew of Heath's status. Further, Stevenson and Manley were good friends.[22] It was reasonable for the jury to infer that, because of Manley's relationship with Stevenson, Stevenson would explain why he wanted Heath killed.

■ There is also sufficient evidence to support the second statutory aggravator, that Manley killed Heath while acting as the agent of Stevenson. Manley argues that the prosecution did not prove beyond a reasonable doubt that he was the actual triggerman in the shooting. However, several witnesses saw the killer and gave descriptions that matched that of Manley.[23] In addition, the bullets used at the shooting were consistent with those found in a jacket in Stevenson's car that was linked to Manley. There was sufficient evidence to support the jury's finding that Manley was the shooter.

For the same reasons as stated above in Stevenson's case, the evidence supports the jury's finding that the murder was premeditated and the result of substantial planning. Manley was spotted in the parking lot of Heath's apartment waiting for Heath to walk to his car. In addition, the note with Chona's name and address suggests that plan included killing her as well, because she also was to be a State witness in Stevenson's prosecution.

■ We also find that Manley's sentence was not arbitrary and capricious. As in Stevenson's case, the judge performed a lengthy analysis and discussed all the relevant aggravating and mitigating circumstances in Manley's case. In addition to the aggravating factors found in Stevenson's case, with respect to Manley, the judge found that Manley was unprovoked and a complete stranger to Heath. Manley has had twenty-four disciplinary incidents during his ten years in prison included several incidents with razors. The judge also considered the following mitigating factors: Manley's age, academic and athletic abilities, Manley's enrollment in the Army Reserves, and his positive relationships with family and friends. The judge properly weighed these factors and determined that the death sentence was appropriate. That determination was consistent with the jury's recommendation.

Finally, the Court must determine if Manley's sentence is disproportionate to the penalty imposed. This case fits the pattern of cases deserving of the death penalty as reflected in the applicable universe of cases.[24]

22. Stevenson's sister testified that once her family moved to Delaware, she "started seeing [Manley], really seeing him then, once we moved to Delaware."

23. For example, when Manley was arrested he as wearing a dark blue shirt, blue jeans, and white sneakers. Michael Chandler testified that he saw two black males in a car in the apartment parking lot. When shown a picture of the car at trial, he positively identified it as the one he saw the morning of the killing. Susan Butler saw a black male of average height with a stocky build walking past her window the morning of the killing wearing a blue shirt. Philip Hudson testified that he saw a black male with a stocky build wearing white high-tops get into Stevenson's car in the apartment parking lot. Susanne Brown, a girl waiting for the bus that morning, saw a man in a navy blue shirt shoot Heath.

24. See 11 Del. C. § 4209(g)(2)(a); Appendix A.

## VI. Conclusion

Having carefully reviewed the entire record, we find no error by the Superior Court. The sentences of death were not imposed or recommended arbitrarily or capriciously and they are consistent with other cases involving a deliberate, cold-blooded, execution-style killing of a defenseless victim. Accordingly, the judgments of the Superior Court imposing the death sentence on Stevenson and Manley are AFFIRMED.

## APPENDIX A
## APPENDIX A*

Name: Robert Ashley
Criminal ID: 9605003410
County: New Castle
Sentence: Life (following retrial and second penalty hearing, 3-9 decision)
Decision on appeal: 2006 WL 797894 (Del. Mar. 27, 2006)

Name: Meri-Ya C. Baker
Criminal ID: 90011925DI
County: New Castle
Sentence: Life imprisonment (9-3)
Decision on appeal: 1993 WL 557951 (Del. Dec. 30, 1993)

Name: Jermaine Barnett
Criminal ID: 9506017682
County: New Castle
Sentence: Life imprisonment (8-4) (following second penalty hearing)
Decision on appeal: 749 A.2d 1230 (Del.2000) (remanding for new sentencing)

Name: Hector S. Barrow
Criminal ID: 9506017661
County: New Castle
Sentence: Life imprisonment (8-4) (following second penalty hearing)
Decision on appeal: 749 A.2d 1230 (Del.2000) (remanding for new sentencing)

Name: Tyreek D. Brown
Criminal ID: 9705011492
County: New Castle
Sentence: Life imprisonment (4-8)
Decision on appeal: 1999 WL 485174 (Del. Mar. 1, 1999)

Name: Justin L. Burrell
Criminal ID: 9805012046
County: Kent
Sentence: Life imprisonment (0-12)
Decision on appeal: 766 A.2d 19 (Del.2000)

Name: Luis G. Cabrera
Criminal ID: 9703012700
County: New Castle
Sentence: Life imprisonment (7-5)
Decision on appeal: 747 A.2d 543 (Del.2000)

Name: Luis G. Cabrera
Criminal ID: 9904019326
County: New Castle
Sentence: Death (11-1)

Decision on appeal: 840 A.2d 1256 (Del.2004)

Name: Thomas J. Capano
Criminal ID: 9711006198
County: New Castle
Sentence: Life (following remand for new penalty hearing)
Decision on appeal: 889 A.2d 968 (Del.2006)

Name: James B. Clark, Jr.*
Criminal ID: 9406003237
County: New Castle
Sentence: Death (judge only)
Decision on appeal: 672 A.2d 1004 (Del.1996)

Name: Charles M. Cohen
Criminal ID: 90001577DI
County: New Castle
Sentence: Life imprisonment (4-8)
Decision on appeal: No direct appeal taken

Name: James T. Crowe, Jr.
Criminal ID: 9508008979
County: New Castle
Sentence: Life imprisonment (6-6)
Decision on appeal: 1998 WL 736389 (Del. Oct. 8, 1998)

Name: David F. Dawson*
Criminal ID: 88K00413DI
County: New Castle (venue changed)
Sentence: Death (12-0)
Decision on appeal: 637 A.2d 57 (Del.1994)

Name: Byron S. Dickerson
Criminal ID: 90011926DI
County: New Castle
Sentence: Life imprisonment (9-3)
Decision on appeal: 1993 WL 541913 (Del. Dec. 21, 1993)

Name: Cornelius E. Ferguson*
Criminal ID: 91009926DI
County: New Castle
Sentence: Death (12-0)
Decision on appeal: 642 A.2d 772 (Del.1994)

Name: Donald Flagg
Criminal ID: 9804019233
County: New Castle
Sentence: Life imprisonment (5-7)
Decision on appeal: No direct appeal taken

Name: Freddy Flonnory
Criminal ID: 9707012190
County: New Castle
Sentence: Life imprisonment (following second penalty hearing, 7-5)
Decision on appeal: 893 A.2d 507 (Del.2006)

Name: Sadiki J. Garden
Criminal ID: 9912015068
County: New Castle

Sentence: Life sentence ordered by Delaware Supreme Court
Decision on appeal: 844 A.2d 311 (Del.2004)

Name: Robert J. Garvey
Criminal ID: 0107010230
County: New Castle
Sentence: Life imprisonment (3-9)
Appeal: 873 A.2d 291 (Del.2005)

Name: Robert A. Gattis
Criminal ID: 90004576DI
County: New Castle
Sentence: Death (10-2)
Decision on appeal: 637 A.2d 808 (Del.1994)

Name: Arthur Govan
Criminal ID: 92010166DI
County: New Castle
Sentence: Life imprisonment (7-5; 6-6; 8-5)
Decision on appeal: 1995 WL 48359 (Del. Jan. 30, 1995)

Name: Tyrone N. Guy
Criminal ID: 0107017041
County: New Castle
Sentence: Life imprisonment (1-11)
Decision on appeal: 913 A.2d 558 (Del. 2006)

Name: Jason Anthony Hainey
Criminal ID: 0306015699
County: New Castle
Sentence: Life imprisonment (5-7)
Appeal: 878 A.2d 430 (Del.2005)

Name: Akbar Hassan-El
Criminal ID: 010701704
County: New Castle
Sentence: Life (1-11)
Decision on appeal: 911 A.2d 385 (Del.2006)

Name: Robert W. Jackson, III
Criminal ID: 92003717
County: New Castle
Sentence: Death (11-1)
Decision on appeal: 684 A.2d 745 (Del.1996)

Name: Larry Johnson
Criminal ID: 0309013375
County: New Castle
Sentence: Life imprisonment (1-11)
Decision on appeal: 878 A.2d 422 (Del.2005)

Name: David Jones
Criminal ID: 9807016504
County: New Castle
Sentence: Life imprisonment (7-5)
Decision on appeal: 798 A.2d 1013 (Del.2002)

Name: Michael Keyser
Criminal ID: 0310021647

| | |
|---|---|
| County: | Kent |
| Sentence: | Life imprisonment (10-2) |
| Decision on appeal: | 893 A.2d 956 (Del.2006) |

| | |
|---|---|
| Name: | David J. Lawrie* |
| Criminal ID: | 92K03617DI |
| County: | Kent |
| Sentence: | Death (9-3) |
| Decision on appeal: | 643 A.2d 1336 (Del.1994) |

| | |
|---|---|
| Name: | Thomas M. Magner |
| Criminal ID: | 9509007746 |
| County: | New Castle |
| Sentence: | Life imprisonment (4-8) |
| Decision on appeal: | 1998 WL 666726 (Del. July 29, 1998) |

| | |
|---|---|
| Name: | Frank W. Moore, Jr. |
| Criminal ID: | 92S03679DI |
| County: | Sussex |
| Sentence: | Life imprisonment (4-8) |
| Decision on appeal: | 1994 WL 202289 (Del. May 9, 1994) |

| | |
|---|---|
| Name: | Adam Norcross |
| Criminal ID: | 0002006278A |
| County: | Kent |
| Sentence: | Death (10-2) |
| Decision on appeal: | 816 A.2d 757 (Del.2003) |

| | |
|---|---|
| Name: | Juan Ortiz |
| Criminal ID: | 0104013797 |
| County: | Kent |
| Sentence: | Death (11-1) |
| Decision on appeal: | 869 A.2d 285 (Del.2005) |

| | |
|---|---|
| Name: | Jack F. Outten |
| Criminal ID: | 92000786DI |
| County: | New Castle |
| Sentence: | Death (7-5) |
| Decision on appeal: | 650 A.2d 1291 (Del.1994) |

| | |
|---|---|
| Name: | James W. Perez |
| Criminal ID: | 93001659 |
| County: | New Castle |
| Sentence: | Life imprisonment (2-10) |
| Decision on appeal: | No. 207, 1993, Moore, J. (Del. Feb. 3, 1994) |

| | |
|---|---|
| Name: | Gary W. Ploof |
| Criminal ID: | 0111003002 |
| County: | Kent |
| Sentence: | Death (12-0) |
| Decision on appeal: | 856 A.2d 539 (Del.2004) |

| | |
|---|---|
| Name: | James Allen Red Dog* |
| Criminal ID: | 91001754DI |
| County: | New Castle |
| Sentence: | Death (judge only) |
| Decision on appeal: | 616 A.2d 298 (Del.1992) |

| | |
|---|---|
| Name: | Luis Reyes |

Criminal ID: 9904019329
County: New Castle
Sentence: Death (9-3)
Decision on appeal: 819 A.2d 305 (Del.2003)

Name: James W. Riley
Criminal ID: 0004014504
County: Kent
Sentence: Life imprisonment (following retrial) (0-12)
Decision on appeal: 2004 WL 2850093 (Del. Oct. 20, 2004)

Name: Jose Rodriguez
Criminal ID: 93001668DI
County: New Castle
Sentence: Life imprisonment (9-3)
Decision on appeal: 659 A.2d 228, 1994 WL 679731 (Del. Nov. 29, 1994)

Name: Richard Roth, Jr.
Criminal ID: 9901000330
County: New Castle
Sentence: Life imprisonment (3-9)
Decision on appeal: 788 A.2d 101 (Del.2001)

Name: Reginald N. Sanders
Criminal ID: 91010161DI
County: New Castle (venue changed)
Sentence: Life imprisonment (following 1992 resentencing) (5-7)
Decision on appeal: 585 A.2d 117 (Del.1990) (remanding for new sentencing)

Name: Nelson W. Shelton*
Criminal ID: 92000788DI
County: New Castle
Sentence: Death (8-4)
Decision on appeal: 652 A.2d 1 (Del.1995)

Name: Steven W. Shelton
Criminal ID: 92000787DI
County: New Castle
Sentence: Death (8-4)
Decision on appeal: 650 A.2d 1291 (Del.1994)

Name: Donald J. Simmons
Criminal ID: 92000305DI
County: New Castle
Sentence: Life imprisonment (10-2)
Decision on appeal: No direct appeal taken

Name: Chauncey Starling
Criminal ID: 0104015882
County: New Castle
Sentence: Death (on two counts, 12-0)
Decision on appeal: 903 A.2d 758 (Del.2006)

Name: Brian David Steckel*
Criminal ID: 9409002147
County: New Castle
Sentence: Death (11-1)
Decision on appeal: 711 A.2d 5 (Del.1998)
Name: Willie G. Sullivan*

| | |
|---|---|
| Criminal ID: | 92K00055 |
| County: | Kent |
| Sentence: | Death (9-3) |
| Decision on appeal: | 636 A.2d 931 (Del.1994) |

| | |
|---|---|
| Name: | Ralph Swan |
| Criminal ID: | 0002004767A |
| County: | Kent |
| Sentence: | Death (7-5) |
| Decision on appeal: | 820 A.2d 342 (Del.2003) |

| | |
|---|---|
| Name: | Antonio L. Taylor |
| Criminal ID: | 9404018838 |
| County: | Kent |
| Sentence: | Life imprisonment (6-6) |
| Decision on appeal: | 685 A.2d 349 (Del.1996) |

| | |
|---|---|
| Name: | Milton Taylor |
| Criminal ID: | 0003016874 |
| County: | New Castle |
| Sentence: | Death (10-2) |
| Decision on appeal: | 822 A.2d 1052 (Del.2003) |

| | |
|---|---|
| Name: | Desmond Torrence |
| Criminal ID: | 0205014445 |
| County: | New Castle |
| Sentence: | Life imprisonment (5-7) |
| Decision on appeal: | 888 A.2d 232, 2005 WL 2923501 (Del. Nov. 2, 2005) |

| | |
|---|---|
| Name: | Charles H. Trowbridge |
| Criminal ID: | 91K03044DI |
| County: | Kent |
| Sentence: | Life imprisonment (6-6) |
| Decision on appeal: | 676 A.2d 908, 1996 WL 145788 (Del. Mar. 4, 1996) |

| | |
|---|---|
| Name: | James W. Virdin |
| Criminal ID: | 9809015552 |
| County: | Kent |
| Sentence: | Life imprisonment (1-11) |
| Decision on appeal: | 780 A.2d 1024 (Del.2001) |

| | |
|---|---|
| Name: | John E. Watson |
| Criminal ID: | 91008490DI |
| County: | New Castle |
| Sentence: | Life imprisonment (8-4) |
| Decision on appeal: | No direct appeal taken |

| | |
|---|---|
| Name: | Dwayne Weeks |
| Criminal ID: | 92010167 |
| County: | New Castle |
| Sentence: | Death (10-2) |
| Decision on appeal: | 653 A.2d 266 (Del.1995) |

| | |
|---|---|
| Name: | Joseph Williams |
| Criminal ID: | 9809018249 |
| County: | New Castle |
| Sentence: | Life imprisonment (10-2) |
| Decision on appeal: | 818 A.2d 906 (Del.2002) |

Name: Roy R. Williamson
Criminal ID: 93S02210DI
County: Sussex
Sentence: Life imprisonment (4-8)
Decision on appeal: 669 A.2d 95 (Del.1995)

Name: Jermaine M. Wright
Criminal ID: 91004136
County: New Castle
Sentence: Death (9-3)
Decision on appeal: 671 A.2d 1353 (Del.1996)

Name: Craig A. Zebroski
Criminal ID: 9604017809
County: New Castle
Sentence: Death (9-3)
Decision on appeal: 715 A.2d 75 (Del.1998)

* The universe of cases prior to 1991 is set forth in appendices to prior opinions by this Court, and those appendices are incorporated herein by reference. *See, e.g., Lawrie v. State*, Del.Supr., 643 A.2d 1336, 1352–56 (1994).